**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **JOHN DENNIS CHAPMAN,**  Movant, | **CRIMINAL NO.**  **1:07-CR-0412-20-CAP-GGB** |
| v. | **CIVIL ACTION NO.**  **1:11-CV-03366-CAP-GGB** |
| **UNITED STATES OF AMERICA,**  Respondent. | **MOTION TO VACATE**  **28 U.S.C. § 2255** |

## ORDER AND FINAL REPORT AND RECOMMENDATION

John Dennis Chapman ("Chapman") has filed a motion to vacate sentence under 28 U.S.C. § 2255. (Doc. 929). Chapman challenges the constitutionality of his life sentence that was imposed on March 4, 2009, following a jury verdict of guilty for conspiracy to distribute cocaine (Count One) and conspiracy to launder drug money (Count Seven) on December 15, 2008. (Doc. 649). Presently before the Court for consideration are: (1) Chapman's § 2255 motion to vacate (Doc. 929); and (2) the United States of America's (hereinafter "Government") response to Chapman's motion to vacate (Doc. 939). Chapman filed a late reply to the Government's response (Doc. 960) on April 3, 2012 along with a motion for leave to file a reply to the Government's response (Doc. 961). Chapman's motion for leave to file his reply is granted.

## I. FACTS

Chapman was charged in a superseding indictment, along with 21 other individuals, with drug trafficking and money laundering offenses. (Doc. 221). Chapman was charged with participation in a cocaine conspiracy (Count One); possession with intent to distribute cocaine (Count Two); and participation in a conspiracy to launder money (Count Seven). Attorney S. Ralph Martin was appointed to represent Chapman.

Before trial, the Government filed notices pursuant to 21 U.S.C. § 851 that Chapman had a prior drug conviction in California and two prior drug convictions in Iowa. (Docs. 387, 426).

The facts relating to Chapman, as set forth by the Court of Appeals, are as follows:

Between April and December 2007, agents of the Drug Enforcement Agency investigated a Mexican organization that trafficked in cocaine. Agents learned that, after the drugs entered the United States, the cocaine was transported to houses in Atlanta, Georgia, in vehicles or tractor trailer trucks of Palmer Trucking Line, a company owned by Troy Palmer and that employed Chapman as a driver. Agents intercepted telephone calls in which Ramon Madrigal stated that he had transported cocaine to an individual named Compadre in Atlanta, Georgia. Compadre was later identified as Ramiro Campuzano-Velasco. Agents learned that Campuzano-Velasco supervised the Atlanta operation, of which [co-defendant Rigoberto] Sanchez and Chapman were members.

On October 18, 2007, federal agents intercepted telephone calls that the Atlanta operation planned to transport $300,000. The agents overheard Campuzano-Velasco direct Sanchez to deliver a duffle bag containing cash

2

to the driver of a tractor trailer truck. After agents observed the exchange, they stopped the truck and seized $350,000.

Several days later, federal agents intercepted several telephone calls arranging for Campuzano-Velasco and Sanchez to receive 45 kilograms of cocaine. Agents videotaped Campuzano-Velasco and Sanchez accepting two large duffle bags from Chapman and giving one duffle bag to Chapman. The agents later intercepted a telephone call in which Madrigal explained to Campuzano-Velasco that the duffle bag given to Chapman contained payment for the cocaine.

*****************************************************

Palmer testified about Chapman's knowledge of the conspiracy. Palmer testified that, after he was apprehended transporting marijuana, Chapman retrieved Palmer's truck. Palmer stated that he "assumed" he had told Chapman that he was transporting drugs, and Palmer testified that he had told Chapman the shipments of money he had transported were proceeds of drug transactions.

(Doc. 871).

After the close of the evidence at trial, Chapman's counsel moved for a judgment of acquittal, arguing that the evidence was insufficient to submit the charges to the jury. The district court denied this motion. (Doc. 871 at 7-8). The jury found Chapman guilty of conspiracy to possess and distribute at least 5 kilograms of cocaine and money laundering conspiracy, and not guilty of possession with intent to distribute cocaine. (Doc. 602).

3

AO 72A
(Rev.8/82)

Chapman's counsel challenged the sufficiency of the evidence a second time in a written motion for a judgment of acquittal. He argued that the Government had presented conflicting evidence of his guilt, and the jury had acquitted him of possessing cocaine in spite of a videotape that depicted Chapman participating in the transaction. (Doc. 610). The district court denied the motion. (Doc. 622).

Additional facts are discussed in context below.

## II. **DISCUSSION**

In his motion, Chapman raises claims of ineffective assistance of trial and appellate counsel. The Supreme Court precedent applicable to ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668, 698 (1984). To make a successful claim of ineffective assistance of counsel, a petitioner must show that: (1) his counsel's performance was deficient; and (2) that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 697. A petitioner must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. The court must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To make such a showing, a petitioner must demonstrate that "no competent counsel would have taken

4

the action that his counsel did take." *United States v. Freixas*, 332 F.3d 1314, 1319-20 (11th Cir. 2003) (quotation omitted).

In order to meet the second prong of the test, the petitioner must demonstrate that counsel's unreasonable acts or omissions prejudiced him. That is, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### A. COUNSEL DID NOT PROVIDE INEFFECTIVE ASSISTANCE ON DIRECT APPEAL

Martin represented Chapman on direct appeal to the Eleventh Circuit. Chapman's arguments on appeal related to Chapman's sentencing. The Eleventh Circuit affirmed Chapman's conviction and sentence. (Doc. 871)

Chapman argues that his counsel rendered ineffective assistance on appeal in that he failed to pursue on appeal the argument that the evidence at trial was insufficient to support the convictions.[1] However, Chapman's claim fails under the second prong of the *Strickland* test. The Government presented sufficient evidence for

---

[1]Chapman's counsel's appellate brief did raise sufficiency of the evidence, but instead of making an argument, he merely referred to his motions in the district court that argued insufficiency of the evidence. The Court of Appeals ruled that Chapman abandoned his challenge to the sufficiency of the evidence because he did not provide any meaningful discussion of the evidence. (Doc. 871 at 13).

5

a jury to find Chapman guilty of the drug and money laundering conspiracies. Therefore, there is no reasonable probability that, but for counsel's alleged deficiency, the result of the appeal would have been different.

When reviewing the sufficiency of the evidence, the "critical inquiry" is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S 307, 318-19, 99 (1979).

Chapman worked for co-defendant Troy Palmer, who testified at Chapman's trial after pleading guilty. Chapman emphasizes that Palmer never testified that he told Chapman that the bags he was delivering in his truck contained cocaine. While it is true that Palmer never testified that he explicitly told Chapman that he would be delivering drugs, there is sufficient evidence from which a jury could infer that Chapman knew he was delivering drugs, and that he had a tacit agreement with Palmer to do so and share the drug sale proceeds with Palmer.

Palmer testified that Chapman first worked for him after Palmer was arrested in Nebraska with marijuana on his truck. While Palmer was in jail, he recruited Chapman to pick up his truck from an impound yard. Palmer believed that Chapman knew what had occurred. (Doc. 721 at 56).

6

Later, Palmer sent Chapman to Los Angeles to pick up cocaine. Palmer testified that he assumed that Chapman knew he was picking up drugs. When asked why Palmer assumed that Chapman knew about the drugs, Palmer testified, "I reckon I told him." (Doc. 721 at 57).

Chapman delivered two duffle bags containing 45 kilograms of cocaine to a vehicle in a Costco parking lot near Atlanta along a back row of parking spaces. The bags containing the drugs were not delivered at a loading dock where trucks typically unload their contents. (Doc. 719 at 11-12). Chapman unloaded the duffle bags from his truck's tool box and placed them in the back seat of a Ford Focus driven by Rigoberto Sanchez, who Chapman met in the Costco parking lot. (Doc. 719 at 13; Doc. 720 at 66-7). Shortly thereafter, Campuzano-Velazco, driving a different vehicle, delivered a bag with money to Chapman in the same parking lot. (Doc. 720 at 63-67).

Palmer instructed Chapman to bring the money back to him and told him what the money was for. (Doc. 721 at 59). Palmer would split the money with his drivers who delivered drugs for him. (*Id.* at 59-60). The exchange in the Costco parking lot, the way the delivery was packaged, and the method and amount of payment differed sharply from the way in which legitimate loads were handled by Palmer's truck drivers. (Doc. 721 at 44-47).

AO 72A
(Rev.8/82)

It is not necessary for the Government to prove a formal agreement in order to prove a conspiracy. Instead, an agreement may be demonstrated by circumstantial evidence of a meeting of the minds to commit an unlawful act. Proof that a defendant committed an act which furthered the purpose of the conspiracy is circumstantial evidence that proves the existence of an agreement. *See United States v. Moore*, 525 F.3d 1033, 1040 (11th Cir. 2008).

The circumstantial evidence recounted above and by the Court of Appeals was sufficient for a rational factfinder to infer that Chapman was part of a drug and money laundering conspiracy. Thus, Chapman was not prejudiced by his counsel's failure to properly argue insufficiency of the evidence in the Court of Appeals.

### B. COUNSEL DID NOT PROVIDE INEFFECTIVE ASSISTANCE AT TRIAL

#### 1. Cross-Examination of Troy Palmer

Chapman argues that his counsel was ineffective at trial in the manner in which he cross-examined testifying co-defendant Troy Palmer. Chapman contends that his counsel should have impeached Palmer's credibility by bringing out that Palmer should have received a mandatory life sentence, but instead received a sentence of seventeen years.

8

However, Palmer's plea agreement was entered into evidence. (Doc. 721 at 40). Palmer testified that he received a sentence of seventeen and a half years, but that he could have received "20 to life." (Doc. 721 at 42). Palmer also testified about his prior drug convictions and admitted that he was a methamphetamine user. (*Id.* at 41). The Government brought out that Palmer could have been sentenced up to life imprisonment, but he did not receive a higher sentence because of a "mistake" that the prosecutor made.[2]

Chapman's counsel brought out in his cross-examination that Palmer entered into a plea agreement with the Government in which two counts were dismissed, that Palmer could have received a life sentence, but was sentenced to 210 months, and that Palmer hoped to reduce his sentence further by testifying for the government. (Doc. 721 at 61-63).

Chapman argues that his counsel was deficient in not bringing out the true fact that Palmer would have received a mandatory life sentence if the Government had filed a timely notice of Palmer's prior convictions. However, as Chapman recognizes (*See* Doc. 929, n. 4), any impeachment of Palmer would have to be based on what Palmer

---

[2]The record does not specify the "mistake" but the parties assume that the mistake was that the Government did not file a notice under 21 U.S.C. § 851 of Palmer's prior drug convictions that would have resulted in a mandatory life sentence for Palmer.

9

knew about his potential benefits from testifying, and there is no indication that Palmer knew that he avoided a *mandatory* life sentence because of the Government's inaction. All of the facts regarding Palmer's plea agreement and what Palmer believed about the benefits of the agreement and his cooperation were brought out before the jury. Any other facts would not be relevant to Palmer's motivation to testify falsely. Thus, counsel was not ineffective for failing to bring out that Palmer would have received a mandatory life sentence if the Government had given the court timely notice of his prior convictions.

Furthermore, Chapman has not argued what, if any, testimony from Palmer about Chapman was false. For that reason alone, Chapman has not shown that he was prejudiced by counsel's allegedly deficient impeachment of Palmer.

## 2. **Failure to object to prosecutor's closing argument**

Chapman argues that his counsel was ineffective in failing to object to improper arguments during the prosecutor's closing argument. The prosecutor made the following argument about Chapman:

> And lastly we get to Chapman, Mr. Chapman. The video speaks for itself. The phone calls tell you what happened. The phone calls tell you about the 45 kilos of cocaine. They tell you about how Rigo was involved, they tell you how Ramiro was involved. Chapman got involved, and you heard Palmer talk about that. When he was arrested in Nebraska carrying a load of weed, Chapman had come up to pick up the truck and drive it back, actually went to Tennessee, and then eventually brought it back to

10

AO 72A
(Rev.8/82)

California. At that point in time he wanted in on the action. As I said, we have three to seven thousand dollars for legitimate loads, $45,000 for the 45 kilos. That's a huge difference. Even if they were splitting that money, which they were, half of 45 is 22-5. That's a lot of money for basically a couple of days' work.

**And Mr. Chapman, ladies and gentlemen, he's been around a lot. He's a 58-year-old man who has been a truck driver. He's not naive. He knew what was going on. He was getting a piece of that action. He was getting some of that money. He was part of that drug conspiracy.**

(Doc. 722 at 51).

Earlier in her summation the prosecutor stated:

**[Palmer] recruited some of his drivers to drive those trucks. They actually came to him, I believe he testified, and said they wanted in on the action.**

(Doc. 722 at 32).

Chapman contends that counsel was ineffective in not objecting to the highlighted portions above. He states that there was no evidence that supported these statements.

The prosecutor's statements that Chapman knew what was going on and that he was getting a piece of the action were legitimate attempts to convince the jury to make inferences from the evidence. To the extent that the prosecutor's statements that Chapman had been around a lot, was 58 years old, was not naive, and that some of Palmer's drivers came to Palmer and said they wanted in on the action, were not based

11

on evidence and were not valid inferences, trial counsel's failure to object was not prejudicial to Chapman. The trial court told the jury that anything the lawyers said was not evidence, that their own recollection and interpretation of the evidence controlled, and that what the lawyers said was not binding on the jurors. (Doc. 722 at 105-6). Any possible prejudice was cured by the trial court's instructions to the jury. *See Johnson v. Alabama,* 256 F.3d 1156, 1185 (11th Cir. 2001) (finding that any possible prejudice in prosecutor's inaccurate closing argument was cured by trial court's correct jury instructions); *Smith v. United States*, 379 F. App'x 811 (11th Cir. 2010) (holding that failure to object to improper argument was not prejudicial where district court instructed the jury that arguments were not evidence and government presented ample proof of guilt).

Chapman also argues that his counsel was ineffective in not objecting to the prosecutor's request to the jury to "[p]lease find [the defendants] guilty." However, there is no prohibition to a prosecutor asking a jury to find a defendant guilty. While the use of the word "please" suggests some degree of personal interest of the prosecutor, it does not rise to the level of an improper argument.

### 3.     **<u>Failure to challenge Chapman's prior convictions</u>**

Lastly, Chapman argues that his counsel was ineffective for failing to challenge Chapman's prior convictions under 21 U.S.C. § 851 (e). Chapman had two prior drug

12

AO 72A
(Rev.8/82)

felony convictions in 2003 in Iowa. (PSR ¶¶ 126, 127; Doc. 727 at 9). The Government gave proper and timely notice to the defense that it intended to use those convictions to enhance Chapman's sentence under Title 21, United States Code, Sections 841(b)(1)(A), 846, and 851. (Doc. 426; Doc. 727 at 11).

Chapman argues that these Iowa convictions should not have been used to enhance his sentence because he received bad advice from the attorney that represented him when he plead guilty, and he did not knowingly enter his guilty pleas in the Iowa cases. Chapman states that he possessed the drugs involved in these offenses for personal use, not distribution, and thus was not guilty of possession with intent to distribute, but rather simple possession. (Doc. 929-1 at 36).

However, in *Custis v. United States*, 511 U.S. 485, 496-7 (1994), the Supreme Court held that, during his federal sentencing proceeding, a defendant could not attack the validity of a prior conviction that raised his maximum sentence, except where the prior conviction was obtained in violation of the right to counsel under *Gideon v. Wainwright*, 372 U.S. 335 (1963). Here, Chapman does not dispute that he had counsel during the Iowa cases that resulted in his prior convictions. Therefore, his counsel in the federal case was not ineffective for failing to attack the validity of his prior state convictions.

13

In *Daniels v. United States*, 532 U.S. 374, 376 (2001), the Supreme Court made clear that a federal prisoner may not use a § 2255 motion to collaterally attack prior convictions that were used to enhance his sentence. A federal prisoner may only challenge the enhancement of the federal sentence after he has successfully attacked his prior state conviction. Here, there has been no such attack on Chapman's prior state convictions. Thus, there is no basis for a § 2255 challenge based on invalid state convictions.

### III. **CERTIFICATE OF APPEALABILITY**

According to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A prisoner satisfies this standard by demonstrating that reasonable jurists would find that the district court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

14

Chapman has failed to make a substantial showing of the denial of a constitutional right. Accordingly, **I RECOMMEND** that a certificate of appealability be **DENIED**.

## IV. CONCLUSION

Based on the foregoing, **I RECOMMEND** that Chapman's motion to vacate sentence (Doc. 929) be **DENIED.**

As stated earlier, Chapman's motion for leave to file his reply (Doc. 961) is **GRANTED**.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral to me.

**IT IS SO ORDERED AND RECOMMENDED**, this 17th day of August, 2012.

*Gerrilyn G. Brill*
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)